UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

GLENN HARPER,

                  Defendants.

_____

REPORT & RECOMMENDATION

05-CR-6068L

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated May 6, 2005, all pre-trial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 5).

Defendant Glenn Harper ("Harper") is charged in a two-count Indictment. The first count charges Harper with conspiring to possess firearms after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 371. The second count charges Harper with possessing eight firearms after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and 2. Both counts allege that the charged offense occurred on or about April 22, 2005. (Docket # 4).

Currently pending before this Court for Report and Recommendation are Harper's motions to suppress statements and to suppress tangible evidence or, in the alternative, for a *Franks* hearing. Also before the Court is Harper's motion to dismiss the Indictment. (Docket ##

28, 42, 59).[1]  The following constitutes this Court's Report and Recommendation on each of

Harper's motions.


## FACTUAL BACKGROUND

On April 22, 2005, officers from the Rochester Police Department executed a

search warrant issued by Monroe County Court Judge Richard A. Keenan for 151 Third Street in

the City of Rochester.  In support of his motion to suppress tangible evidence, Harper has

submitted a copy of the search warrant for this Court's review, as well as the affidavit submitted

in support of the warrant by Rochester Police Officer Jennifer Morales.  (Docket # 28, Exs. A

and B).  A hearing was also conducted before this Court on September 13, 2005, regarding

Harper's motion to suppress statements.  (Docket # 43).

A.  **Search Warrant for 151 Third Street:**  On April 21, 2005, Judge Keenan

authorized a search of 151 Third Street for, *inter alia*, firearms, ammunition, cocaine and cocaine

paraphernalia.  (Docket # 28, Ex. B).  In Officer Morales's supporting affidavit (Docket # 28, Ex.

A ("Morales Aff.")), she affirmed that on April 20, 2005, at approximately 12:00 p.m., she met

with a confidential informant who reported that he[2] had just spoken with two men named Glenn

---

[1]  Harper's omnibus motions also sought, *inter alia*, a bill of particulars, disclosure of Grand Jury minutes, disclosure of plea agreements, disclosure of confidential informants, a witness list, discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, disclosure of "impeachment evidence," disclosure of wiretaps, disclosure of surveillance, discovery of "non-witness statements," inspection of police officer personnel files, notice pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure, *Brady* material, disclosure of mental health records, disclosure of mail covers, disclosure of Grand Jury testimony, inspection of Grand Jury evidence, early production of *Jencks* material, preclusion of co-conspirator declarations, disclosure of co-conspirator statements, a conspiracy hearing, leave to make a *Bruton* request and to join in the motions of co-defendant Kenneth Harper.  Each of these requests was either resolved by the parties, withdrawn or decided in open court by the undersigned on September 13, 2005.  (Docket ## 38, 39).

[2]  For ease of reading, this Court will use the male pronoun to refer to the confidential informant, whose gender has not been identified by the government.

and Kenneth Harper.  (Morales Aff. at 3-4).[3]  The informant indicated that he had known both for

over ten years and that both lived at 151 Third Street.  (Morales Aff. at 4).  According to

Morales, the confidential informant further indicated that Glenn Harper had shown him a digital

photograph depicting five or six long rifles.  Harper had reportedly advised the informant that the

photograph was taken earlier that day in Harper's upstairs bedroom and that the guns were .22

caliber rifles that were stolen from "the country."  Also depicted in the photograph was a holster

hanging on the bedroom wall.  (Morales Aff. at 4).

　　　　　In addition to the photograph, the informant also stated that he had been inside

151 Third Street and that both Glenn and Kenneth Harper have bedrooms in the residence.  On

five occasions (the dates of which were not specified), the confidential informant had seen rifles

and handguns inside 151 Third Street, as well as a revolver in Kenneth Harper's vehicle, which

he identified as bearing New York State license plate number CZZ-6694.  The informant also

reported that approximately one month earlier, Kenneth Harper had offered to sell him a

MAC-10 semi-automatic weapon for $800.  The informant declined the offer, indicating that he

was interested in a smaller handgun.  According to the informant, Kenneth Harper responded that

he had a .44 caliber revolver, but that it was not for sale.  (Morales. Aff. at 4).

　　　　　Finally, the informant stated to Morales that Kenneth Harper "ha[s] a weapon

nearby at all times" due to ongoing feuds between drug gangs.  The informant further stated that

Kenneth Harper's friend Aaron Odum was killed on January 1, 2005, that Harper and Odum had

---

[3] References to Morales's affidavit are to the pages of the affidavit because the paragraphs are not
separately numbered.

committed several home invasions together and that Harper feared retaliation for those robberies. (Morales Aff. at 4).

With respect to the reliability of the informant, Morales affirmed that the informant had been "an active confidential informant" for the past two months. During that period, information provided by the informant had been corroborated by Morales and had led to various narcotics and weapons prosecutions. (Morales Aff. at 3).

Morales's affidavit also detailed a prior controlled purchase of narcotics by another confidential informant. According to her affidavit, on January 6, 2005, Morales observed Kenneth Harper conducting numerous suspected narcotics transactions at 270 Central Park. To investigate such transactions, Morales provided an informant with $40 in cash for the purpose of conducting a controlled purchase of narcotics from Kenneth Harper. Thereafter, Morales observed the informant meet with Kenneth Harper and receive a bag from him in exchange for $40. After the purchase, the confidential informant returned directly to Morales's undercover vehicle and provided her with four clear "dime" bags containing a substance later determined to be cocaine, which the informant represented had been purchased from Kenneth Harper. According to Morales, the informant had provided reliable information to the police for the past five years that had led to "numerous narcotics and weapons charges." (Morales Aff. at 5).

Morales also affirmed that she had observed Glenn and Kenneth Harper entering and exiting 151 Third Street on several occasions, the most recent of which was on April 19, 2005 – two days before the search warrant was issued. (Morales Aff. at 5).

Finally, Morales affirmed that both Glenn Harper and Kenneth Harper have felony convictions. Glenn Harper was convicted of criminal possession of stolen property in the third degree on June 4, 1990, robbery in the third degree on May 20, 1996, and forgery in the second degree on January 13, 2000. Kenneth Harper was convicted of criminal possession of stolen property in the fifth degree on December 15, 2000. (Morales Aff. at 5).

**B. Suppression Hearing:** This Court conducted a suppression hearing on September 13, 2005, relating to Harper's motion to suppress statements. During the hearing, the government presented the testimony of Investigator Thomas Cassidy, Sergeant David Poyer and Officer Bryant Johnson of the Rochester Police Department.[4] (Docket ## 37, 43). Based upon that testimony, this Court finds the following.

On April 22, 2005, Officer Johnson assisted in the execution of the search warrant for 151 Third Street. (Tr. 52, 113).[5] Officer Johnson was a member of the entry team and assisted in taking Glenn and Kenneth Harper into custody. (Tr. 113). Following the search, Johnson transported Glenn Harper to the Monroe County Public Safety Building, secured him in an interview room on the third floor and waited outside the door. (Tr. 114-15). Kenneth Harper was also transported to the Public Safety Building and secured in an interview room across the hall. (Tr. 116).

---

[4] Investigator Charles Dominic also testified concerning his interview of Kenneth Harper. Because Kenneth Harper has entered a plea since the hearing, this Court will address only those portions of the suppression hearing that relate to Glenn Harper's motions.

[5] The transcript of the suppression hearing conducted before this Court on September 13, 2005, shall hereinafter be referenced as "Tr. __." (Docket # 43).

While Johnson was in the hallway between the two interview rooms, he heard Glenn and Kenneth Harper shouting back and forth to each other.  Specifically, Johnson heard Glenn Harper telling his brother that a firearm had been discovered in his bedroom and asking Kenneth to take the "rap" for him, stating that he would "take care" of him in jail.[6]  (Tr. 119). The shouting between the interview rooms lasted for approximately fifteen minutes.  (Tr. 121-22).

As they were shouting, Sergeant Poyer walked into the area and heard the yelling. (Tr. 100-01).  From the room in which Glenn Harper was secured, Poyer heard him yell, in sum and substance, "You need to take this charge for me."  (Tr. 102).  Poyer then went into the room in order to quiet Harper.  When he entered, Glenn Harper asked for a cigarette and stated, "It's really dark in here," even though Poyer observed the room to be well-lit.  Harper then put his head down and stated, "I'm looking at a lot of time."  (Tr. 104).  Because he was not involved in the investigation, Poyer left the room and made a written record of Harper's statement.  Poyer also directed that Kenneth Harper be moved to an interview room on the fourth floor so that the two suspects could not talk to each other.  (Tr. 106, 123).

Thereafter, Investigator Cassidy arrived to conduct interviews of the two Harpers. (Tr. 58).  As he explained, he was not involved in the investigation that led to the issuance of the search warrant.  Rather, he was involved in an unrelated homicide investigation about which he wished to interview the Harpers.  Cassidy entered the room in which Glenn Harper was sitting, introduced himself and obtained Harper's biographical information, which he recorded.  (Tr. 62-

---

[6]  According to Johnson, Glenn and Kenneth Harper were the only suspects in interview rooms at the time. Johnson was able to attribute particular statements to each of the defendants because he knew which defendant was in each room.  (Tr. 120).

64).  He then advised Harper of his *Miranda* warnings by reading them verbatim from a *Miranda*

notification card.  (Tr. 64; G.Ex. 4).  After reading the warnings, Cassidy asked Harper whether

he understood his rights, to which Harper responded that he did.  (Tr. 64).  Cassidy then asked

Harper whether he wanted to speak with him, and Harper again responded affirmatively.  (Tr. 64-

65).  Following the *Miranda* warnings, Cassidy interviewed Harper for approximately one hour,

the majority of which related to the homicide investigation.  (Tr. 66).  For the remaining portion

of the interview, Cassidy questioned Harper about firearms located at 151 Third Street, the

substance of which Cassidy recorded in a two-page report.  (Tr. 67-68; G.Ex. 3).  At the

conclusion of his interview with Glenn Harper, Cassidy went to the fourth floor of the Public

Safety Building and interviewed Kenneth Harper.  (Tr. 69).

According to Cassidy, Glenn Harper did not appear fatigued or under the

influence of drugs or alcohol.  (Tr. 60).  He also did not appear to have any difficulty

communicating, nor did he complain of any physical injury.  At no time during the interview did

Glenn Harper ask to speak with an attorney, nor did Cassidy make any threats or promises to

Harper in order to induce him to speak.  (Tr. 61, 68).

## DISCUSSION

Harper moves for the suppression of physical evidence seized on April 22, 2005

from his residence at 151 Third Street.  In addition, Harper also moves to suppress statements he

made at the Monroe County Public Safety Building following his arrest.  Finally, Harper moves

to dismiss the Indictment on the grounds of insufficiency.  (Docket ## 28, 42, 59).  For the

following reasons, it is the recommendation of this Court that each of the motions be denied.

## I.  Suppression of Physical Evidence

Harper moves to suppress the evidence seized from 151 Third Street,[7] claiming that the search warrant affidavit submitted by Morales failed to establish probable cause because it relied upon information provided by an informant of unknown veracity.[8]  In the alternative, Harper requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Harper further contends that the search warrant unlawfully permitted the searching officers to conduct a general search and to enter the residence without knocking and announcing their presence.  (Docket # 28).  The government opposes Harper's motion, arguing that the search warrant was supported by probable cause and was otherwise proper.  (Docket # 29).

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement.  According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.  A reviewing court's obligation is merely to determine

---

[7]  The evidence seized consisted of firearms and firearms-related evidence.  It did not include narcotics or narcotics paraphernalia.  (Docket # 28 at ¶¶ 8, 24, Ex. C).

[8]  Harper has submitted an affidavit demonstrating his standing to challenge the search of 151 Third Street.  (Docket # 40).  Based upon that affidavit, the government concedes that Harper had a reasonable expectation of privacy in the residence.  (Tr. 139).

that the issuing judge had a "'substantial basis for... conclud[ing]' that probable cause existed."
*United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238-39)
(internal quotation omitted).  Moreover, "resolution of marginal cases should be determined by
the preference to be afforded to warrants."  *Id*. (citing *Jones v. United States*, 362 U.S. 257, 270
(1960)).

     A. **Morales's Affidavit Established Probable Cause:**  This Court has reviewed
the affidavit submitted by Officer Morales to Judge Keenan in support of her application for the
search warrant for 151 Third Street.  (Docket # 28, Ex. A).  In that affidavit, Morales affirmed
that on April 21, 2005, she received information from a confidential informant relating to Glenn
and Kenneth Harper.  (Morales Aff. at 3-4).  The informant stated that he had known the Harpers
for over ten years and that they both resided at 151 Third Street.  (Morales Aff. at 4).  The
informant further provided Morales with three pieces of information.  First, he stated that he had
spoken to Glenn and Kenneth Harper earlier in the day and that Glenn Harper had displayed to
him a digital photograph depicting five or six long rifles, as well as a holster hanging on the wall.
(Morales Aff. at 4).  According to the informant, Harper had indicated that the photograph had
been taken that same day in his upstairs bedroom and that the firearms were .22 caliber rifles that
were stolen from "the country."  (Morales Aff. at 4).

     Second, the informant reported to Morales that he had observed rifles and
handguns inside the residence at 151 Third Street on five occasions and that he had also observed
a revolver in Kenneth Harper's vehicle.  (Morales Aff. at 4).  Moreover, approximately one
month earlier, the informant stated, Kenneth Harper had offered to sell him a MAC-10 semi-
automatic weapon for $800.  Declining the offer, the informant indicated to Harper that he

wanted a smaller handgun.  Kenneth Harper then stated to the informant that he had a .44 caliber

revolver, but that it was not for sale.  (Morales Aff. at 4).

Finally, the informant reported to Morales that Kenneth Harper was known to

keep a weapon nearby at all times because of ongoing drug feuds.  According to the informant,

Harper had been involved in several home invasions and feared retaliation for those robberies.

(Morales Aff. at 4).

In her affidavit, Morales also affirmed that she had observed Glenn and Kenneth

Harper entering and exiting 151 Third Street on several occasions, the most recent of which was

two days before the search warrant was authorized.  (Morales Aff. at 5).  Morales also indicated

that a criminal records check of Glenn Harper revealed prior convictions for criminal possession

of stolen property, robbery and forgery; a criminal records check of Kenneth Harper revealed a

conviction for criminal possession of a stolen property on December 15, 2000 (the most recent

date of any of the convictions noted).  (Morales Aff. at 5).

In addition to the information relating to firearms, Morales's affidavit also

detailed a controlled purchase of cocaine.  According to Morales, on January 6, 2005, she

observed Kenneth Harper conducting suspected narcotics transactions at 270 Central Park.  (The

affidavit contains no information about the proximity of 270 Central Park to 151 Third Street).

Morales then enlisted the assistance of a confidential informant of proven reliability, provided

the informant with $40 and observed the informant purchase four dime bags of cocaine from

Kenneth Harper.  (Morales Aff. at 5).

Considering the sworn assertions, I find that Morales's affidavit was sufficient to

establish probable cause to believe that evidence of illegal firearms would be discovered at 151

Third Street.[9]  Although Harper argues that reliance upon a digital photograph, which can be

altered, is unreasonable, such argument is unconvincing.  The digital photograph was not taken

by the confidential informant and shown to law enforcement.  Rather, the photograph was

displayed to the informant by Glenn Harper, who acknowledged that it was taken in his bedroom

earlier that day, and the informant merely reported to Morales what he had seen.  Indeed,

Harper's display of the photograph depicting firearms in his possession made sense in the context

of his relationship with the informant, which included at least one prior offer to sell him a

firearm.

Accordingly, assuming that Morales was reasonable in her reliance upon the

information provided by the confidential informant, I find that her affidavit was sufficient.  It is

to this assumption that this Court now turns.

**B.  A _Franks_ Hearing is Not Warranted:**  According to Harper, suppression or

alternatively a _Franks_ hearing is justified because Morales's affidavit failed to adequately

demonstrate the reliability of the informant who reported observing the firearms in the

photograph and at 151 Third Street.  (Docket # 28).

Under the Supreme Court's holding in _Franks v. Delaware_, "a district court may

not admit evidence seized pursuant to a warrant if the warrant was based on materially false and

misleading information."  _United States v. Levasseur_, 816 F.2d 37, 43 (2d Cir. 1987) (citing

---

[9]  I find, however, that Morales's affidavit was insufficient to establish probable cause to search for cocaine.
The single controlled purchase detailed by Morales had occurred several months earlier and was not conducted at
151 Third Street.  These allegations, in my view, failed to demonstrate reason to believe that cocaine would be
discovered in the residence several months later.  My conclusion that probable cause was wanting is nevertheless
immaterial because no cocaine or drug paraphernalia was seized from 151 Third Street.  If it had been, a hearing
would have been appropriate to determine whether such evidence would inevitably have been discovered during the
search for firearms.

*Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993).  To warrant a *Franks*

hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that

(1) the affidavit contained false statements made knowingly or intentionally, or with reckless

disregard for the truth; and (2) the challenged statements or omissions were necessary to the

Magistrate's probable cause finding."  *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation

omitted).  A hearing is required if the defendant provides the court with a sufficient basis upon

which to doubt the truth of the affidavit at issue.  As the Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine.  There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They should
> point out specifically the portion of the warrant affidavit that is
> claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.  Allegations of negligence or
> innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

A *Franks* hearing is not required where it is sought merely on the basis of an

allegation that the information in the search warrant affidavit subsequently proved to be

inaccurate, especially where that information derives from a source independent of the affiant.

*See id.* ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only

that of the affiant, not of any nongovernmental informant"); *United States v. Wapnick*, 60 F.3d

948, 956 (2d Cir. 1995) (defendant not entitled to *Franks* hearing based upon showing that

informant knowingly or recklessly made false statement to affiant as long as affiant in good faith

represented what the informant said), *cert. denied*, 517 U.S. 1187 (1996); *United States v. Cook*, 348 F. Supp. 2d 22, 29-30 (S.D.N.Y. 2004) (denying *Franks* hearing based upon argument that informant had provided false information because defendant had not demonstrated that affiant made false statement or acted with reckless disregard for truth); *United States v. Hennings*, 1997 WL 714250, *6 (W.D.N.Y. 1997) (rejecting motion for *Franks* hearing based upon assertion that confidential informant had not provided a truthful report because "an attack on the informant's statements is permitted only for the purpose of demonstrating misstatements made by the government").   Although the Second Circuit has not defined precisely the level of proof necessary to establish reckless disregard for the truth, *see United States v. Kunen*, 323 F. Supp. 2d 390, 395 (E.D.N.Y. 2004), other courts have articulated the appropriate test as "whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his (or her) statements or had obvious reasons to doubt the accuracy of the information he (or she) reported."  *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999) (citations omitted); *see also Lippay v. Christos*, 996 F.2d 1490, 1500-01 (3d Cir. 1993); *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991); *United States v. A Residence Located at 218 Third Street, New Glarus, Wis.*, 805 F.2d 256, 258 (7th Cir. 1986); *United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986).

Here, although Harper summarily challenges the credibility of the confidential informant, he has not submitted any evidence to suggest that Morales was aware of any alleged falsity at the time she drafted the affidavit or that she disregarded obvious reasons to doubt the accuracy of the information provided by the informant.  *See United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001) ("*Franks* is implicated only when the false statement is made

by, or the reckless disregard is that of, the affiant.  There is no right to a hearing when the challenge is to information provided by an informant or other source.").  Rather, Harper argues generally that Morales's affidavit did not demonstrate the credibility of the confidential informant and that her reliance upon the digital photograph amounted to a reckless disregard for the truth.  (Docket # 28).  This Court disagrees.

As discussed above, the confidential informant did not take the digital photograph in question.  Glenn Harper presented the photograph to the informant and told him that it was taken earlier that day in his bedroom.  The informant merely reported the conversation to Morales, who, in turn, presented the information in her affidavit for the search warrant.  Morales clearly indicated that she had received that information from the confidential informant on the previous day.  (Morales Aff. at 3-4).  Morales also affirmed that the informant was personally known to her and, for the past two months, had provided information that had been corroborated by Morales and had led to the arrests of suspects on narcotics and weapons charges.  (Morales Aff. at 3).  Although not revealing a wealth of information, Morales's affidavit set forth the basis for her belief that the information provided by the confidential informant was reliable.

Harper has offered no evidence to suggest, nor has he even argued, that Morales's representation about the informant's information or reliability was knowingly false.  Nor has he come forward with any facts to suggest that Morales should have doubted the accuracy of the informant's information or veracity.  To the contrary, Morales's affidavit sufficiently detailed the adequate basis she had for crediting the informant's representations.  *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an

affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).

Having found no basis to question the veracity of Morales's representations in her affidavit, I further find that the search warrant for firearms and firearms evidence signed by Judge Keenan for 151 Third Street was supported by probable cause.

**C. <u>Search Warrant Did Not Authorize a General Search</u>:**  Harper further argues that the search warrant for 151 Third Street was defective because it was "tantamount to a general search of the premises."  (Docket # 28 at 7).  Under the Fourth Amendment, a search warrant must "particularly describ[e] the place to be searched, and the person or things to be seized."  U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).  The reason for this "particularity" requirement is to prevent general searches.  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory search the Framers intended to prohibit."  *Id.* at 84.  A warrant is sufficiently particular if it specifies the crimes for which the search is being conducted, so long as the warrant does not merely reference "'evidence' of a broad criminal statute or general criminal activity."  *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

Here, the search warrant authorized a search for and seizure of:

> Firearms, in violation of Section(s) 265 of the New York State Penal Law.  Any receipts for the purchase of said firearms, along with any ammunition used in conjunction with said firearms, along with all such property, which constitutes

evidence, and fruits and instrumentalities of a violation of
Section 265.00 of the New York State Penal Law. . . . [; and]

Cocaine, in violation of Section(s) 220 of the New York State
Penal Law, and all implements and paraphernalia used to
prepare for sale, packaging and/or administer any cocaine in
any form.  Also, any such evidence which tends to demonstrate
that a drug related offense was committed or that a particular
person participated in the commission of such offense, to
include written records or books tending to show sale and
trafficking of cocaine, and money showing profits from the sale
of cocaine, pursuant to Section 690.10(4) of the New York
State Criminal [P]rocedure Law.  Also, items or articles of
personal property tending to show identity of a person in
ownership, dominion or control of said premises.

(Docket # 28, Ex. B at ¶ 3).

A simple reading of the search warrant makes clear that it identified two
categories of evidence that were to be seized from 151 Third Street:  evidence relating to the
possession of illegal firearms and evidence relating to the trafficking of cocaine.  Indeed, the
warrant specifically referenced the underlying sections of the New York Penal Law upon which it
was premised.  Accordingly, I find that the warrant was sufficiently particular to identify for the
searching officers the evidence of specific criminal activity for which they were authorized to
search, *see United States v. George*, 975 F.2d at 76, and I therefore recommend that Harper's
motion to dismiss on that basis be denied.[10]

**D.  No-Knock Authorization was Justified:**  Although not included in his
moving papers, Harper made an oral motion on December 7, 2005, challenging the search

---

[10]  As previously noted, I find that the search warrant was not supported by probable cause to believe that
evidence of narcotics trafficking would be present at the location.  *See supra* note 8.  That issue is, of course, a
separate issue from the question of adequate particularization.

warrant's provision authorizing the searching officers to enter his residence without knocking and announcing their presence.

Under New York Criminal Procedure Law § 690.35(4)(b), an officer may request authorization to enter a premises without first knocking or announcing his or her presence upon a showing of reasonable cause to believe that the property sought in the warrant may be easily and quickly destroyed or concealed or that the safety of the officer or another would be endangered by the giving of such notice. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("a no-knock entry is justified if police have a 'reasonable suspicion' that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation") (citing *Richards v. Wisconsin*, 520 U.S. 385, 394-95 (1997)); *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995) ("although a search and seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry").  While the Fourth Amendment does not permit a blanket exception to the knock and announce requirement for felony drug investigations, *Richards v. Wisconsin*, 520 U.S. at 394, the requirement may be excused where there exists "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."  *Id.*

Here, the warrant issued by Judge Keenan authorized a search of 151 Third Street for evidence related to the possession of illegal firearms and cocaine trafficking.  In her affidavit, Morales requested that the searching officers be permitted to enter the residence without notice of authority on the grounds that evidence relating to the cocaine trafficking could easily and

quickly be destroyed and that the likely presence of firearms could endanger the safety of the

officers.  Specifically, Morales affirmed:

> a) The property sought to be seized may be easily and quickly
> disposed of or destroyed.  Based on your deponent's
> experience, dealers of controlled substances and/or marijuana
> often flush said substances down the toilet or have
> predetermined hiding places in order to keep said substances
> from being seized by executing Police Officers.
>
> b) The giving of such notice may endanger the life or safety of
> the executing Police Officer or that of a third person because of
> the fact that the person(s) involved in the sales of cocaine
> normally are in possession of weapons to guard the substance
> possessed.  Therefore, I request a no-knock warrant.

(Morales Aff. at 6).

Although not specified in this portion of Morales's affidavit, the search warrant

also referenced multiple stolen firearms that as recently as the day before the warrant issued were

located inside 151 Third Street.  In addition, one of the residents of that location, a three-time

convicted felon, reportedly attempted to sell a semi-automatic weapon to the informant and kept

a revolver near him at all times because he feared retaliation for his past criminal conduct.  I find

that, taken together, the allegations in Morales's affidavit justified the issuance of the no-knock

warrant.

**E.  <u>Evidence Admissible Pursuant to Good Faith Exception</u>:**  Even if probable

cause did not exist to justify the issuance of a search warrant or the no-knock authorization,

nothing in the record suggests that the searching officers did not rely upon the warrant in good

faith.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the Fourth

Amendment exclusionary rule should not be applied to evidence obtained by a police officer

whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective. *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000). The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable. Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
>
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and
>
> (4) where the warrant is so facially deficient that reliance upon it unreasonable.

*Id.* at 923. *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Here, as described above, I find that Morales did not knowingly mislead Judge Keenan, nor is there any evidence to suggest that the judge wholly abandoned his role as a judicial officer. Moreover, Morales's affidavit set forth a detailed description of her investigation relating to firearms at 151 Third Street. Thus, it simply cannot be said that the search warrant application was so lacking in probable cause as to render the executing officer's reliance upon it unreasonable. Finally, the search warrant was not so facially deficient that it

would have been unreasonable for the searching officers to rely upon it.  Accordingly, even if the search warrant for 151 Third Street was not supported by probable cause, Harper's motion to suppress the evidence seized from his residence should also be denied under the *Leon* good-faith exception.

## II.  <u>Suppression of Statements</u>

Harper also moves to suppress statements he made at the Monroe County Public Safety Building following his arrest on April 22, 2005.  (Docket ## 28, 59).  The government opposes such motion, arguing that all of the statements were made voluntarily and in accordance with Harper's constitutional rights.  (Docket # 47).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that the government may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege.  As the Second Circuit has articulated,

> [c]ustodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

"'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Interrogation includes direct questioning, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis*, 446 U.S. at 301, or that would "produce psychological pressures that [would] subject the individual to the 'will' of his examiner." *United States v. Morales*, 834 F.2d at 38 (citations omitted).  *See also United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Thomas*, 961 F. Supp. 43, 44-45 (W.D.N.Y. 1997).

Here, the government does not appear to contest that Harper was in custody at the time the challenged statements were made.  (Docket # 47 at 19).  The question is whether his statements were nevertheless voluntary or whether they were the product of interrogation.  For ease of analysis, Harper's statements can be separated into three categories: (a) statements made to his brother and overheard by the officers; (b) statements made to Sergeant Poyer; and (c) statements made to Investigator Cassidy.  This Court will address each set of statements in turn.

A. **Statements Overheard by the Officers**:  According to testimony presented to this Court, following the search of their residence, Glenn and Kenneth Harper were transported to the Public Safety Building and initially placed in separate interview rooms across the hall from one another.  (Tr. 114-16).  Officer Johnson was positioned between the two rooms when he heard the Harpers shouting back and forth to one another for approximately fifteen minutes.  (Tr. 119, 121-22).  Johnson specifically recalled overhearing Glenn Harper shout to his brother that a firearm had been discovered in his bedroom and asking Kenneth to take the "rap" for him, stating

21

that he would "take care" of him in jail.  (Tr. 119).  As the shouting continued, Poyer walked into

the area and heard Glenn Harper utter words to the effect of, "You need to take this charge for

me."  (Tr. 102).

        Generally excepted from the *Miranda* requirements are statements spontaneously

made by a defendant.  The Supreme Court has established that statements made by a defendant

that are not elicited in response to interrogation do not violate the Fifth Amendment.  *See Innis*,

446 U.S. at 299-300.  As the Court has reasoned:

> Any statement given freely and voluntarily without any compelling
> influences is, of course, admissible in evidence.  The fundamental
> import of the privilege while an individual is in custody is not
> whether he is allowed to talk to the police without the benefit of
> warnings and counsel, but whether he can be interrogated. . . .
> Volunteered statements of any kind are not barred by the Fifth
> Amendment and their admissibility is not affected by our holding
> today.

*Miranda v. Arizona*, 384 U.S. at 478; *see also Innis*, 446 U.S. at 299-300; *United States v. Vasta*,

649 F. Supp. 974, 987 (S.D.N.Y. 1986).  *See United States v. DeVincenzi*, 1996 WL 252673, *2

(N.D.N.Y. 1996) (government bears burden of proving that defendant made statements

spontaneously) (citing *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) (it is the

government's burden to demonstrate that defendant's statements were not obtained in violation

of *Miranda*) (citations omitted)).

        The statements made by Glenn Harper while shouting from the interview room

were not made in response to any inquiry or comment by a law enforcement officer.  Indeed, the

statements were not even directed to the officers, but were made by Glenn Harper to his brother.

I find that these statements were entirely spontaneous and did not violate Harper's Fifth

Amendment rights.  *See Miranda*, 384 U.S. at 478; *Rhode Island v. Innis*, 446 U.S. at 299-300.  I therefore recommend that Harper's motion to suppress the statements made by him while shouting to his brother in an adjacent interview room be denied.

  **B.  Harper's Statements Made to Sergeant Poyer**:  Sergeant Poyer testified that when he heard Glenn and Kenneth Harper shouting to one another, he entered the interview room in which Glenn Harper was secured in an effort to quiet him.  When he entered, Glenn Harper asked for a cigarette and stated, "It's really dark in here."  Harper then put his head down and stated, "I'm looking at a lot of time." (Tr. 104).  Without responding to Harper's comments, Poyer left the room and recorded them on paper, after which he returned and provided Harper with the cigarette that he had requested.  Poyer also directed Officer Johnson to record any further statements made by the Harpers and to move Kenneth Harper to the fourth floor so that the two defendants could not speak with each other.  (Tr. 106, 123).

  As with the statements discussed in the previous section, I find that Harper's statements to Sergeant Poyer were spontaneous and not the result of deliberate elicitation by the police.  *See Rhode Island v. Innis*, 446 U.S. at 301.  I therefore recommend, based upon the above-cited authority, that his motion to suppress such statements should therefore be denied.

  **C.  Harper's Statements Made to Investigator Cassidy**:  The final statements challenged by Harper were those made during the interview with Investigator Cassidy.

  As set forth above, the Supreme Court in *Miranda* held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant both was warned of his Fifth Amendment privilege against self-incrimination and voluntarily waived that right.  *Miranda*, 384 U.S. at 444.  To establish a

valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d. 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Here, Cassidy testified that when he entered the interview room, he introduced himself to Harper and obtained his biographical information. (Tr. 62-64). He then advised Harper of his *Miranda* warnings by reading them verbatim from a *Miranda* notification card. (Tr. 64; G.Ex. 4). Cassidy asked Harper whether he understood his rights and whether he wanted to speak with him, and Harper responded affirmatively to both questions. (Tr. 64-65). Following the *Miranda* warnings, Cassidy interviewed Harper principally about a separate homicide investigation. During the remaining portion of the interview, Cassidy questioned Harper about the firearms discovered at 151 Third Street. (Tr. 66-68). The entire interview lasted approximately one hour. (Tr. 66).

According to Cassidy, Harper did not appear to be fatigued, physically injured or under the influence of drugs or alcohol. (Tr. 60). He appeared to have no difficulty communicating with Cassidy. Neither Cassidy, nor any other officer made any threats or promises to induce Harper to speak. Finally, at no time during the interview did Harper ask to speak with an attorney. (Tr. 61, 68).

On this record, I find that Harper knowingly and voluntarily waived his *Miranda* rights and agreed to speak with Investigator Cassidy. Accordingly, it is the recommendation of

this Court that Harper's motion to suppress statements made during his interview on April 22, 2005 be denied.

## III.   Dismissal of the Indictment

Finally, Harper also moves to dismiss the Indictment on the grounds that the evidence presented to the Grand Jury was legally insufficient to support the charges against him. This argument is unavailing.

It is well-established that an indictment that is valid on its face, as is the case here, cannot be dismissed on the grounds that is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir.1989), *cert. denied*, 493 U.S. 1081 (1990). Instead, the appropriate time to make such a motion is after the government has presented its case at trial. *See, e.g., United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a).

In view of this authority, it is my recommendation that Harper's motion to dismiss the Indictment due to the alleged insufficiency of the evidence be denied.

## CONCLUSION

For the foregoing reasons, it is my report and recommendation that Harper's motion to suppress tangible evidence **(Docket # 28)** be **DENIED**. It is my further recommendation that Harper's motion to suppress statements **(Docket # 28)** be **DENIED**.

Finally, it is also my recommendation that Harper's motion to dismiss the Indictment on the grounds of insufficiency **(Docket # 28)** be **DENIED**.


                                                 _s/Marian W. Payson_____
                                                        MARIAN W. PAYSON
                                                  United States Magistrate Judge

Dated:  Rochester, New York
            March   10   , 2006.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

 **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

 **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[11]

 The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

 <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

 The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>**Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**</u>

 Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**


        <u>  *s/Marian W. Payson*       </u>
         MARIAN W. PAYSON
        United States Magistrate Judge


Dated: Rochester, New York
   March  10 , 2006.

---

[11]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).