UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                              DECISION & ORDER and
_____        REPORT & RECOMMENDATION
                                    Plaintiff,

                    v.                                        05-CR-6068L

GLENN HARPER,

                            Defendants.

_____

### PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated May 6,

2005, all pretrial matters in the above captioned case have been referred to this Court pursuant to

28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 5).

Defendant Glenn Harper ("Harper") is charged in a five-count superseding

indictment.  The first and second counts charge that on April 22, 2005 and December 4, 2002,

respectively, Harper unlawfully possessed firearms after having been convicted of crimes

punishable by terms of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1)

and 924(a)(2).  The third count charges that between those same dates Harper knowingly

possessed a stolen firearm that had been shipped or transported in interstate commerce, in

violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  Count Four charges that between December 4,

2002 and September 20, 2004, Harper knowingly possessed a shotgun with a barrel less than

eighteen inches in length, in violation of 26 U.S.C. §§ 5822, 5845(a), 5861(c) and 5871.  The

final count charges that Harper knowingly possessed the firearm referenced in the fourth count

even though such firearm was not registered to him, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d) and 5871.  (Docket # 85).

       While the initial indictment was pending and prior to the return of the superseding indictment, Harper filed omnibus motions seeking, *inter alia*, suppression of physical evidence seized during the execution of a search warrant for his residence and suppression of statements made by him at the Monroe County Public Safety Building following his arrest.  (Docket ## 28, 42, 59).  Harper argued that the affidavit offered in support of the search warrant was unsupported by probable cause and that his statements were the product of custodial interrogation.  By Report and Recommendation dated March 10, 2006, this Court recommended denial of Harper's motions.  (Docket # 60).  That recommendation was adopted, over Harper's objection, by United States District Judge David G. Larimer on May 30, 2006.  (Docket # 69).

       Following the return of the superseding indictment, Harper filed several supplemental motions.  Among other relief, the motions sought identification of confidential informants, disclosure of grand jury proceedings and suppression of a firearm that was seized during a search of Harper's residence in 2004 (almost one year earlier than the execution of the search warrant that was the subject of this Court's previous Report and Recommendation).[1] (Docket ## 97, 98).

---

[1] Harper's supplemental motions also sought an audibility hearing, *Brady* material, *Jencks* material, discovery and inspection, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, the preservation of rough notes, suppression of in-court identifications, inspection of the grand jury wheel and written notice pursuant to Rule 12 of the Federal Rules of Civil Procedure.  (Docket # 97).

## FACTUAL BACKGROUND

An evidentiary hearing concerning Harper's motion to suppress was conducted before this Court on July 10, 2007. At the hearing, the government offered the testimony of Officer Richard Gallipeau of the Rochester Police Department. No witnesses were called on behalf of the defense. Based upon the credible testimony, this Court finds the following.

On September 20, 2004, the Rochester Police Department received a 911 call from Harper's parents, who reported that on the previous day their son had threatened them with a firearm.[2] (Tr. 9-11, 48). Although Harper's parents resided at 151 Third Street in the City of Rochester, Gallipeau and other members of the Rochester Police Department met and interviewed them at a nearby location. (Tr. 12-14, 33). After speaking with Mr. and Mrs. Harper, the officers and the Harpers proceeded to 151 Third Street. (Tr. 14, 21).

One of the officers knocked on the door to 151 Third Street, and Glenn Harper responded through a window. Harper appeared agitated and refused to exit the residence. (Tr. 15-16, 37). The officers spoke with Harper through the window for approximately fifteen minutes in an effort to calm him down. (Tr. 15-16, 37). Harper then disappeared from the window, but continued to talk with the officers over the telephone. (Tr. 37). Approximately half an hour later, Harper voluntarily emerged from the house and was placed in a patrol car. (Tr. 18, 37).

Once Harper was secured, Gallipeau approached Harper's father, Joseph Harper, who was sitting in a different patrol car with the door open. (Tr. 17-18, 20, 39). Gallipeau

---

[2] The transcript of the suppression hearing conducted before this Court on July 10, 2007, shall hereinafter be referenced as "Tr. __." (Docket # 107).

explained to Mr. Harper that he could not search the residence for the firearm unless "somebody in control of the house" provided consent to do so; otherwise, Gallipeau explained, they would need to obtain a search warrant.  (Tr. 17-18, 21-22, 40).  Mr. Harper stated that he was the owner of 151 Third Street and that his son Glenn Harper was living with him.  (Tr. 18).  Joseph Harper agreed to permit the officers to search his house, with the exception of the defendant's room. (*Id.*).  Gallipeau explained that if they searched the remainder of the house and did not find anything, they would still need a search warrant in order to search the defendant's room.[3]  (Tr. 22).

Following this conversation, Gallipeau began to prepare a written consent-to-search form.  Gallipeau explained the purpose of the form to Joseph Harper and began to complete it in his presence.  (Tr. 25).  The consent form stated:

> I, Joseph Harper consent to have my premises . . . searched by the police.  I do agree and consent to have Off. Gallipeau or any members of the Rochester Police Department, conduct a complete search of : The Premise of 151 Third St.

(Tr. 25; G.Ex. 1).  Joseph Harper signed the form.  (Tr. 18).  He also advised the officers that his son's room was located on the second floor.  (Tr. 41).

According to Gallipeau, no threats or promises were made to Joseph Harper in order to induce him to consent to the search.  (Tr. 18-20).  Harper did not appear to be under the influence of any drugs or alcohol, nor did he have any difficulty communicating with the officers. At no time did he request the opportunity to speak with an attorney.  (Tr. 19).  Finally, no other persons present claimed to have a proprietary interest in the residence or objected to the search.

---

[3]  Gallipeau testified that he believed Sergeant Zlotkus of the Rochester Police Department was also present during the conversation.  (Tr. 22).

(Tr. 31-32).  The entire conversation relating to the search lasted approximately fifteen minutes.
(Tr. 28).

Gallipeau and three other officers searched the residence.  They did not search the
defendant's bedroom.  (Tr. 29, 41).  During the search of the basement, Gallipeau observed a
portion of a sheet protruding above the foundation.  Gallipeau tugged on it and felt something
heavy, which turned out to be a shotgun.  (Tr. 30).  After the search concluded, Joseph Harper
confirmed that the shotgun was the same gun with which his son had threatened him the previous
day.  (Tr. 27).


## REPORT & RECOMMENDATION

Harper moves to suppress the shotgun on the grounds that it was seized during a
warrantless search.  (Docket # 98).  The government opposes Harper's motion, arguing that the
search was lawful because Harper's father, the owner of the residence, consented to it.  (Docket
## 99, 109).

The Fourth Amendment mandates that a police officer must obtain a warrant
before conducting a search, absent exigent circumstances or some other applicable exception.
*Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (*per curiam*) (citing *California v. Carney*, 471
U.S. 386, 390-91 (1985)).  A warrantless search, however, is permissible if based upon the
voluntary consent of a person authorized to provide consent.  *Schneckloth v. Bustamonte*, 412
U.S. 218, 222 (1973); *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995), *cert. denied*, 516
U.S. 1050 (1996).  Such consent may be given either by the owner of the property that is to be

searched, *Schneckloth v. Bustamonte*, 412 U.S. at 222, or by a third party possessing common authority over said property. *See United States v. Matlock*, 415 U.S. 164, 171 (1974).

The consent need only be voluntary, that is, obtained without coercion, and the resident need not be advised of his or her right not to consent. *See Schneckloth*, 412 U.S. at 241-42; *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). It is the government's burden to prove by a preponderance of the evidence that the consent was voluntary. *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830 (1981).

The issue of voluntariness is to be determined based upon the totality of the circumstances. *Schneckloth*, 412 U.S. at 227; *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir. 1993); *United States v. Kon Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990). "Consent must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993) (citations omitted), *cert. denied*, 511 U.S. 1130 (1994). The standard used to determine the voluntariness of an individual's consent is an objective one. *United States v. Garcia*, 56 F.3d at 423.

A review of the suppression hearing testimony demonstrates that Harper's parents called the police and requested their assistance because Harper had purportedly threatened them with a shotgun. (Tr. 9-11, 48). Officer Gallipeau and other members of the Rochester Police Department initiated an investigation, responded to the residence at 151 Third Street and attempted to speak with Harper. Although Harper initially refused to exit the residence, he did speak with the officers through the window and over the telephone. (Tr. 14-17, 37). Harper eventually emerged from the house and was taken into custody. (Tr. 18, 37).

At that point, Gallipeau spoke with Harper's father, Joseph Harper, and explained that he could not search the residence for the shotgun without a search warrant unless he had consent of the homeowner. (Tr. 17-18, 21-22, 40). Mr. Harper affirmed that he was the owner of 151 Third Street and agreed to allow the officers to search his home, except for the defendant's room. (Tr. 18). Mr. Harper then signed a written consent form. (Tr. 25; G.Ex.1). Although the written form did not explicitly exclude the defendant's bedroom, that room was not searched by the officers.

Considering these facts in their totality, I find that Joseph Harper, as the owner of 151 Third Street, had the authority to consent to the search of that residence. I further find that such consent was the product of his free and unconstrained choice. Indeed, the fact that he limited the scope of his consent to exclude his son's room evidences his understanding of his right to refuse or to limit his consent.

Joseph Harper was not threatened or promised any benefit in order to induce his consent. Moreover, he did not appear to be under the influence of alcohol or drugs, nor did he appear to have difficulty understanding or communicating with the officers. (Tr. 18-20). Finally, no one else present, including the defendant, asserted an interest in the residence or objected to the search. (Tr. 31-32). *Cf. Georgia v. Randolph*, 547 U.S. 103, 120 (2006) (holding that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as to him on the basis of consent given to the police by another resident"). On this record, I find that the government has satisfied its burden of demonstrating that the search of 151 Third Street was lawful – that is, that it was predicated upon

Joseph Harper's voluntary consent and that it did not exceed the scope of his consent. I therefore recommend that Harper's motion to suppress be denied.

### DECISION & ORDER

Also before this Court are Harper's motions seeking identification of confidential informants and disclosure of the grand jury proceedings. (Docket # 97). The government has opposed both motions. (Docket # 99).

## I. Identification of Confidential Informants

The Court previously heard and denied Harper's motion to suppress evidence seized during the execution of a search warrant for his residence on April 22, 2005. Harper now seeks disclosure of the identities of two confidential informants referenced in the affidavit submitted by Rochester Police Officer Jennifer Morales in support of that warrant. (Docket # 97). The affidavit is described in detail in this Court's Report and Recommendation dated March 10, 2006.

In short, Morales's affidavit summarized the information provided by these two informants as follows. The first informant reported to Morales that Harper had shown him[4] a digital photograph depicting five or six stolen rifles, which, according to Harper, had been taken earlier that day in his upstairs bedroom. Also depicted in the photograph was a holster hanging on the wall. (*See* Docket # 28, Ex. A at 3-4). The informant further stated that on five previous occasions he had been inside 151 Third Street and had observed rifles and handguns. (*Id.* at 4).

---

[4]  The gender of the informants was not disclosed; the male pronoun is used for ease of reference.

The second confidential informant had conducted a controlled purchase of cocaine from Harper's brother, Kenneth Harper.  (*Id.* at 5).

The government is generally not required to disclose the identity of confidential informants, *Roviaro v. United States*, 353 U.S. 53, 59 (1957), and the disclosure of a confidential informant's identity is within the sound discretion of the district court, *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991).  In order to obtain such disclosure, the defendant must show that without it, he "will be deprived of a fair trial." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (defendant entitled to identity of confidential informant only upon showing that it is material to the defense), *cert. denied*, 489 U.S. 1089 (1989).  A defendant's mere suggestion that disclosure will be of assistance to the defense of the case is insufficient.  *United States v. Fields*, 113 F.3d at 324.  "[T]he district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Id.* (citing *Roviaro v. United States*, 353 U.S. at 62).  Such a need is established, according to the Second Circuit, "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence."  *United States v. Saa*, 859 F.2d at 1073 (internal quotations omitted).

In the instant matter, I find that Harper has failed to show how disclosure of the informants' identities will be material to his defense.  *See United States v. Flaharty*, 295 F.3d 182, 202 (2d Cir. 2002) ("speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden") (quoting *Fields*, 113 F.3d at 324).

Harper is charged with the possession of firearms seized from his residence during two searches

by law enforcement officers.  Neither of the confidential informants referenced in Morales's

affidavit was present during those searches, and the informants are thus unlikely to possess

material evidence relating to the charges.  Indeed, the government has represented to the Court

that it does not intend to call either of the informants as witnesses at trial, nor does it intend to

present evidence of any interactions between Harper and either informant.  (Tr. 6-7).

Considering the discovery already provided by the government, as well as the

evidence adduced during the pretrial hearings, the nature of the prosecution against Harper is far

from unclear.  To the contrary, Morales's affidavit and the testimony presented during both the

September 13, 2005 and July 10, 2007 suppression hearings provide significant detail concerning

the government's case.  I therefore find that the government's need to protect the safety of the

informants outweighs any benefit that disclosure of the informants' identities may provide.

Accordingly, Harper's motion for disclosure of the identities of the government's confidential

informants is denied.


## II.  Disclosure of Grand Jury Proceedings

Harper also seeks disclosure of information relating to proceedings before the

grand jury.  (Docket # 97).  A presumption exists that grand jury proceedings are lawful and

regular, *United States v. Torres*, 901 F.2d 205, 232-33 (quoting *Hamling v. United States*, 418

U.S. 87, 139 n.23 (1974)), *cert. denied*, 498 U.S. 906 (1990)), and disclosure of grand jury

proceedings is available only by order of the court.  Fed. R. Crim. P. 6(e).  A party seeking

disclosure bears the burden of establishing a "particularized need" or "compelling necessity" for

such disclosure that outweighs the policy of grand jury secrecy.  *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 216 (1979); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  Non-specific allegations of impropriety or mere speculation are insufficient to satisfy this heavy burden.  *United States v. Calandra*, 414 U.S. 338, 345 (1974).  Therefore, "review of grand jury [proceedings] is rarely permitted without specific factual allegations of governmental misconduct."  *United States v. Torres*, 901 F.2d at 233.

In this case, Harper has failed to present the Court with any specific factual allegations suggesting misconduct by the government during the grand jury proceedings.  I find that Harper has not satisfied his burden of establishing a particularized need or compelling necessity for the requested disclosures.  *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. at 400.  Accordingly, Harper's motion is denied.

## CONCLUSION

For the foregoing reasons, Harper's motions for identification of the government's confidential informants and disclosure of grand jury proceedings **(Docket # 97)** are **DENIED**. I further recommend to the district court that Harper's motion to suppress tangible evidence **(Docket # 98)** be **DENIED**.

　　　　　　　　　　　　　　*s/Marian W. Payson*　　　　　　　　
　　　　　　　　　　　　　　　MARIAN W. PAYSON
　　　　　　　　　　　　　　United States Magistrate Judge

Dated: Rochester, New York
　　　　October　 10 　, 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

          *s/Marian W. Payson*
            MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
      October  10 , 2007

---

[5]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).